## JOHN W. BIRKENHEAD
### v.
## DELOS S. BROWN.

*Chattel Mortgages—Priority—Injunctions.*

This court affirms a judgment for the complainant in a controversy involving the question of priority of chattel mortgages.

[Opinion filed May 25, 1893.]

IN ERROR to the Circuit Court of Peoria County; the Hon. T. M. SHAW, Judge, presiding.

Mr. ARTHUR KEITHLEY, for plaintiff in error.

Messrs. PUTERBAUGH, PAGE & PUTERBAUGH, for defendant in error.

Mr. Justice Cartwright. John W. Birkenhead, plaintiff in error, owned and operated a transfer business in Peoria, and negotiated a sale of the property employed therein and the business to his employe, Joseph C. Kennedy. The purchase price was about $2,300, and Kennedy had no means. It was agreed between them that if Kennedy could borrow $1,000 for a first payment, Birkenhead would take a mortgage on the property for the balance. Birkenhead was then indebted to Delos S. Brown, defendant in error, in the sum of about $200, and it was agreed that if Brown would furnish money for such first payment, the $200 should be applied as part of such payment, and Birkenhead should buy a piano, costing $450, from a firm of which Brown was a member, and Brown was to have a mortgage on the transfer property for the total sum. Brown accordingly advanced $800 cash, and this, with Birkenhead's debt of $200 and the piano at $450, amounted to $1,450. A mortgage was made by Kennedy to Brown for $1,350, and another mortgage to Birkenhead for $927, both on the transfer property. It being found that the mortgage to Brown was not large enough, another was made to his firm for $100, and that amount was indorsed as a credit on the mortgage for $927 to Birkenhead. The mortgages were all made and recorded on the first day of May, 1891, and the mortgage to Birkenhead was recorded first. In June, 1891, Birkenhead pledged the note and mortgage made to him to the First National Bank of Peoria as collateral. Afterward, Birkenhead being about to foreclose his mortgage, Brown filed the bill in this case to enjoin the foreclosure, and to have his security declared a prior lien to that of Birkenhead, alleging an agreement between himself and Birkenhead to that effect, and making Kennedy, Birkenhead and the bank defendants.

Issues were formed and the cause referred to the master, who found that there was no agreement that Brown's mortgage should have priority and found in favor of the bank to the extent of its claim, and that the equities were with the defendants to the bill. Brown excepted to the findings of the master except as to the bank's claim, and on a hear-

ing of the exceptions they were sustained, the findings as to priority were set aside, and the court found that there was an agreement by which Brown's mortgage was to have priority and decreed accordingly.   Whether there was such an agreement is the only question of fact in the case.

The parties contradicted each other in their testimony as to the actual making of the agreement, although Birkenhead testified that Brown spoke of having a first mortgage, and that he supposed and believed that Brown intended to have a first mortgage.   He testified that he did not say that Brown should have it.   The mortgages were all made out at the same time and Birkenhead did not claim any agreement that his mortgage was to be a first lien; but the inference from his testimony is that the question of priority was left to be settled by a race to the recorder's office.   Kennedy corroborated Brown as to the agreement, but he had made an affidavit in the case which was contradictory of his testimony and which affected his credibility.   Brown was corroborated also by the facts and circumstances, and his testimony is more probable than that of Birkenhead.   That he required and intended to have and supposed that he was getting a first mortgage, can not be reasonably doubted, and it is not probable that the matter was left without an agreement to depend upon getting to the recorder's office first.   A study of the evidence leads us to the conviction that the court was right as to the fact.

A question is raised whether the agreement could be proved by oral testimony, because it is said that there was written evidence of the contract of the parties.   There was no written agreement between Brown and Birkenhead, and consequently no writing in which their oral agreements were merged.   The decree will be affirmed.

*Decree affirmed.*